Brownstein Hyatt Farber Schreck, LLP
Jonathan Sandler, Bar No. 227352
jsandler@bhfs.com
Jonathan Marvisi, Bar No. 319170
jmarvisi@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, California 90067-3007
Telephone: 310.500.4600
Facsimile: 310.500.4602

Stanley L. Garnett, Colo. Bar No 12282
(*Pro Hac Admission Pending*)
sgarnett@bhfs.com
Amanda K. Houseal, Colo. Bar No. 49628
(*Pro Hac Admission Pending*)
ahouseal@bhfs.com
410 Seventeenth Street, Suite 2200
Denver, Colorado  80202
Telephone:	303.223.1100
Facsimile:	303.223.1111

Attorneys for Defendant
TWO RIVERS WATER & FARMING COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACK MOUNTAIN EQUITIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TWO RIVERS WATER & FARMING COMPANY, <br><br> Defendant. | Case No. 21-CV-0571-JLS-BGS <br><br> **DEFENDANT'S RESPONSE TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** <br><br> Judge: Hon. Janis L. Sammartino <br> Mag. Judge: Hon. Bernard G. Skomal <br> Hearing Date: July 6, 2021 <br> Hearing Time: 9:30 a.m. |

Defendant Two Rivers Water & Farming Company ("Two Rivers" or "Defendant"), by and through undersigned counsel, Brownstein Hyatt Farber Schreck, LLP, hereby files its

Response to Application for Temporary Restraining Order and Preliminary Injunction (the "Application") and states the following:

## I.
## PRELIMINARY STATEMENT

Plaintiff Black Mountain Equities, Inc. ("Black Mountain" or "Plaintiff") failed to properly exercise the underlying Warrant to Purchase Shares of Common Stock ("Warrant") and now seeks a preliminary injunction from this Court ordering Two Rivers to immediately issue 6,471,362 shares of common stock to Black Mountain.[1] Black Mountain delivered its Notice to Exercise ("Notice") to Two Rivers attempting to exercise the Warrant in full. (*See* Baker Decl., **Exhibit C** (ECF No. 8-6)). Pursuant to this exercise, Black Mountain would own or beneficially own shares of common stock exceeding 4.99% in violation of Section 2.2 of the Warrant. (*See* Baker Decl., **Exhibit B** at 3-4, Section 2.2 (ECF 8-5)). Black Mountain also failed to tender the original Warrant to Two Rivers in violation of Sections 2.1(a) and (d) of the Warrant. (*See Id*. at 1,3). Even if Black Mountain had tendered the original Warrant to Two Rivers, Black Mountain further failed to provide a 61-day notice to Two Rivers increasing the Maximum Percentage (as defined in the Warrant), thereby failing to meet its obligations pursuant to Section 2.2 of the Warrant. (*See Id*. at 3-4). Before Two Rivers could respond to Black Mountain outlining these deficiencies, Black Mountain filed, in haste, the underlying action a mere eight (8) days following delivery of its Notice.

Two Rivers will succeed on the merits of this case due to Black Mountain's failure to comply with basic notice requirements outlined in the Warrant. Accordingly, Black Mountain has no right to the shares of common stock it demands. Indeed, it is Two Rivers who will be irreparably harmed should the Court order the requested relief. The Court should deny Black Mountain's request for a preliminary injunction.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Two Rivers acquires, manages, and develops the infrastructure of various agricultural

---

[1] At this time, Two Rivers has no reason to believe it did not issue a Warrant to Black Mountain. Two Rivers reserves the right to amend its position as new information becomes available.

- 2 -

RESPONSE TO APPLICATION FOR TRO
AND PRELIMINARY INJUNCTION
21CV-0571-JLS-BGS

industries, including industries centered on land and water rights. Two Rivers creates a positive social impact on its community through its focus on the sustainable economic development of infrastructure for land and water delivery in rural communities and investing in local agriculture and infrastructure assets. Two Rivers' business strategy helps create local jobs, allows for the progression of residential communities, and restores farmland that has gone fallow for lack or reliable water supply.

Two Rivers is a publicly traded entity with the ticker symbol, "TURV." In 2017, Two Rivers sought financing through the efforts of its then-Chief Executive Officer, Wayne Harding. Upon information and belief, pursuant to a Promissory Note, Black Mountain lent Two Rivers $330,000, plus interest.[2] Upon information and belief, the parties subsequently amended the Promissory Note extending the Maturity Date, increasing the principal amount by $10,000, and causing Two Rivers to issue a Common Stock Purchase Warrant to Black Mountain for 146,000 shares. (*See* Baker Decl., **Exhibit A**).[3]

The Warrant granted Black Mountain the option to purchase 146,000 shares of Two Rivers common stock for $1 per share pursuant to certain conditions being met. (*See* Baker Decl. **Exhibit B**). The Warrant also included an anti-dilution and best-pricing provision that, in certain situations, may adjust the Exercise Price of $1 per share downwards to match the price of any later-issued Two Rivers common stock, or common stock equivalents. (*See Id*. at 4-5, Section 5.2).

In or around 2020, it appears Two Rivers issued common stock to a third party for $0.02256 per share. Pursuant to the Warrant, Black Mountain could, only after meeting several conditions, exercise a right to obtain $146,00's worth of stock at an adjusted exercise price of $0.02256 per share. (*See Id*.). On or around March 24, 2021, Black Mountain attempted to exercise this option in full. In other words, Black Mountain sought $146,000's worth of Two

---

[2] At this time, Two Rivers has no reason to believe it did not enter into a Promissory Note with Black Mountain. Two Rivers reserves the right to amend its position as new information becomes available.

[3] At this time, Two Rivers has no reason to believe it did not enter into an Amendment to Promissory Note with Black Mountain. Two Rivers reserves the right to amend its position as new information becomes available.

Rivers common stock at $0.02256 per share for a total of 6,471,632 shares. (*See* Baker Decl., **Exhibit C**).

This Notice was deficient for several reasons. First, Black Mountain failed to tender the original Warrant within five (5) Trading Days of delivering the Notice in violation of Section 2.1(a) of the Warrant. (*See* Baker Decl., **Exhibit B** at 1 ("[Black Mountain] shall tender this Warrant to the Company within five (5) Trading Days[.]"). Similarly, Section 2.1(d) of the Warrant provides:

> Upon the appropriate payment to [Two Rivers], if any, of the Exercise Price for the Warrant Shares, *together with the surrender of this Warrant (if required)*, [Two Rivers] shall promptly, but in no case later than the date that is five (5) Trading Days following the date the Exercise Price is paid to the Company (or with respect to a "cashless exercise," the date that is three (3) Trading Days following the Exercise Date ("the Delivery Date"), provided that the Company remains DTC/DWAC Eligible (as defined in the Note) are then satisfied, deliver or cause [Two Rivers'] Transfer Agent to deliver the applicable Warrant Shares electronically via the Deposit/Withdrawal at Custodian ("DWAC") system to the account designated by [Black Mountain] on the Notice of Exercise.

(*See Id*. at 3, Section 2.1(d) (emphasis added)). In other words, because Black Mountain was purporting to exercise the Warrant in full, Black Mountain was required to surrender the Warrant *before* Two Rivers was required to deliver the shares to the Transfer Agent. Black Mountain never tendered to Two Rivers the original Warrant. Accordingly, Two Rivers was not required to deliver the Warrant Shares.

The Warrant also contractually prohibits Two Rivers from fulfilling Black Mountain's demands. Specifically, if at any time Black Mountain's exercise of the Warrant would cause Black Mountain or its affiliates to own over 4.99% of Two Rivers' common stock, "[Two Rivers] shall not be obligated and shall not issue to [Black Mountain] the shares which would exceed [4.99%.]" (the "Ownership Limitation").[4] (*See Id*. at 3-4, Section 2.2). In its Notice, Black

---

[4] Baker Decl., **Exhibit B** at 3-4, Section 2.2 "Ownership Limitation" ("If at any time upon exercise of the Warrant, so that the Buyer would, together with other shares of Common Stock help by it or its Affiliates, own or beneficially own by virtue of such action or receipt of additional shares of Common Stock a number of shares exceeding 4.99% of the number of shares of Common Stock outstanding on such date (the "Maximum Percentage") the Company shall not be obligated and shall not issue to the buyer shares of Common Stock which would exceed the Maximum Percentage.").

- 4 -

RESPONSE TO APPLICATION FOR TRO
AND PRELIMINARY INJUNCTION
21CV-0571-JLS-BGS

Mountain demanded 6,287,148 shares of Two Rivers common stock. (*See* Baker Decl., **Exhibit C**). This demand would put Black Mountain above the 4.99% ownership threshold identified in the Ownership Limitation, and therefore Two Rivers is prohibited from issuing any shares of common stock to Black Mountain which would exceed that ownership ceiling. Black Mountain failed to provide a 61-day notice to Two Rivers increasing the Maximum Percentage (as defined in the Warrant), thereby failing to meet its obligations pursuant to Section 2.2 of the Warrant. (*See* Baker Decl., **Exhibit B** at 3-4).

Two Rivers is not obligated to issue any shares of common stock to Black Mountain at this time. The Ownership Limitation coupled with the deficiencies in Black Mountain's Notice to Two Rivers prohibits Two Rivers from complying with Black Mountain's demands. Black Mountain failed to satisfy its obligations pursuant to the Warrant, and thereby materially breached the terms of the Warrant.

## III.
## ARGUMENT

### A.   The Legal Standard for Injunctive Relief

"The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court." (*Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 724 (9th Cir. 1983)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

"A preliminary injunction is an extraordinary remedy never awarded as of right." (*Id*. at 24 (internal quotations omitted)). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." (*Id*. (internal quotations omitted)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." (*Id*. (internal quotations omitted)). A preliminary injunction will not be issued to simply prevent the possibility of future injury. (*Id*. at 22). "The purpose of a preliminary

injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . [and] it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." (*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

Here, Black Mountain seeks a mandatory injunction. With a mandatory injunction, "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, [and] courts should be extremely cautious about issuing a preliminary injunction." (*Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984)). Mandatory injunctions are "particularly disfavored," and the "district court should deny such relief unless the facts and law clearly favor the moving party." (*Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotations omitted)). "In plain terms, mandatory injunctions should not issue in doubtful cases." *Id*. (internal quotations omitted)).

**B.     Two Rivers Has a Clear Likelihood of Prevailing on the Merits**

As explained in the Factual Background section, Black Mountain has failed to properly exercise the Warrant. And rather than wait for a detailed response from Two Rivers, Black Mountain, in haste, filed the underlying lawsuit just eight (8) days after attempting to exercise the Warrant. Due to Black Mountain's procedural failure, it is unlikely to satisfy the first element for mandatory preliminary injunctive relief.

**C.     Black Mountain Will Not Suffer Irreparable Harm**

As a preliminary matter, Black Mountain is not entitled to the relief it seeks for the reasons explained in detail above.

However, assuming, *arguendo*, that Black Mountain did properly exercise the Warrant, which it did not, Black Mountain would not be irreparably harmed. The Warrant specifically provides that the terms of the contract "*may* be specifically enforced by a decree for the specific performance of any agreement contained herein *or* by an injunction[.]" (*Id*. at 6, Section 13 (emphasis added)). In other words, while an injunction is a potential remedy considered under this contract, it is not the only remedy. Black Mountain is not in threat of immediate irreparable

harm and it is not even entitled to the shares of Two Rivers common stock it currently demands. Should Black Mountain prevail on its claims at trial, the Court can order specific performance, which is exactly what the parties' contract anticipates. The mandatory preliminary injunctive relief Black Mountain seeks is an extraordinary remedy that is not appropriate in the present case.

### D. The Balance of the Equities Weighs in Favor of Two Rivers and The Requested Injunction Would be Contrary to Public Interest

The balance of equities weighs in favor of Two Rivers. As discussed in detail above, Black Mountain failed to properly exercise the Warrant, in violation of the parties' contract. Black Mountain now requests the most extreme of remedies from this Court despite its deficiencies. Two Rivers simply seeks to enforce the contract and hold Black Mountain to the terms it agreed to abide by. Black Mountain has no right to the shares of common stock it is demanding and therefore will not be harmed if the Court does not grant its Application. Alternatively, Two Rivers would be harmed if the Court grants Black Mountain the relief it is seeking.

The public has a strong interest in enforcing contracts as written. Two Rivers and Black Mountain are sophisticated parties. The parties had the opportunity to review and negotiate the terms of the Warrant before signing. The Warrant represents the terms the parties agreed to. The public has an interest in holding parties to the terms of bargained-for contracts.

///
///
///
///
///
///
///
///
///

## IV.
## CONCLUSION

For the reasons states above, Black Mountain's Application for a Preliminary Injunction should be denied.

Dated: June 14, 2021

BROWNSTEIN HYATT FARBER SCHRECK, LLP


By: /s/ Jonathan C. Sandler
    Jonathan Sandler, Bar No. 227352
    Jonathan Marvisi, Bar No. 319170
    Stanley L. Garnett (*Pro Hac Admission Pending*)
    Amanda K. Houseal (*Pro Hac Admission Pending*)

Attorneys for Defendant
TWO RIVERS WATER & FARMING COMPANY

- 8 -

RESPONSE TO APPLICATION FOR TRO
AND PRELIMINARY INJUNCTION
21CV-0571-JLS-BGS

# PROOF OF SERVICE

I, Patricia R. Cormier Herron, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, Suite 3550, Los Angeles, California 90067-3007.

On June 14, 2021, I electronically filed the attached document:

**DEFENDANT'S RESPONSE TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

Mazin A. Sbaiti, Esq.
SBAITI & COMPANY PLLC
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
Phone:   (214) 432-2899
Fax:     (214) 853-4367
Email:   mas@sbaitilaw.com

*Attorneys for Plaintiff*
BLACK MOUNTAIN EQUITIES, INC.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 14, 2021, at Los Angeles, California.

/s/ Patricia R. Cormier Herron

22745674.1

PROOF OF SERVICE