1
2
3
4
5
6
7

MAZIN A. SBAITI, ESQ.
CA Bar No. 275089
mas@sbaitilaw.com
SBAITI & COMPANY PLLC
2200 Ross Ave – Suite 4900W
Dallas, Texas 75201
T:  (214) 432-2899
F:  (214) 853-4367
*Counsel for Plaintiff*

8
9
10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

BLACK MOUNTAIN EQUITIES, INC.,

12

*Plaintiff*,

13

14

vs.

15

16

TWO RIVERS WATER & FARMING COMPANY,

17

*Defendant*.

18

19

§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 21-CV-0571-JLS-BGS

**REPLY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY INJUNCTION [ECF NO. 8]**

Judge: Hon. Janis L. Sammartino
Mag. Judge: Bernard G. Skomal
Hearing: July 6, 2021

20
21
22
23
24

Plaintiff Black Mountain Equities, Inc. respectfully files this Reply in Support of its Motion for Temporary Injunction (the "TI Motion") and addresses the arguments raised in Defendant's response to the TI Motion (the "Response") accordingly.

25

### A. IRREPARABLE HARM TO BLACK MOUNTAIN ABOUNDS

26
27

Defendant's Response ignores the key features of the irreparable harm analysis.

28

_____

Reply in Support of Plaintiff's Application for a Temporary Injunction     Page 1

***First***, it is not disputable that Two Rivers Water & Farming Company ("Two Rivers") is essentially insolvent and has not filed its SEC filings in over a year. The law is plain that the inability of a defendant to satisfy a money judgment constitutes irreparable harm. *See Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1141 (9th Cir. 2005) (holding that likelihood that defendant would not have assets to pay damages verdict constituted irreparable harm to the plaintiff warranting injunction); *Hilao v. Marcos (In re Estate of Marcos)*, 25 F.3d 1467, 1480 (9th Cir. 1994) (where plaintiff can establish that defendant would not be able to pay a money judgment, a "district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy").

***Second***, while Two Rivers' shares are trading at 30 to 40 cents a share *today*, it is undisputed that this is not the norm (as was argued in the opening papers). Nothing in the Response by Two Rivers rebuts this point. Indeed, the history of Two Rivers' share price is that is that its average price over the last five years is around two pennies. Two Rivers is behind on its SEC filings, has no current operations that earn money, and so its current share price is likely nothing more than an aberration in the market. And the likely reversion to the norm means that the value in those shares—the only asset it has to satisfy any judgment to Black Mountain—will wipe out any chance of Black Mountain being able to recover its damages.

***Third***, Black Mountain has recently identified a new development that makes the above even more problematic. The SEC's recently adopted rule changes to Rule 15c2-11 will go into effect on September 15, 2021.[1] Those rule changes state that any issuer who is more than 16 months behind on their filings at the time of the rule will not be allowed to trade *on any bid/ask system* because no market professional will be allowed by rule to publish any bid for the stock. The same rule will apply to

---

[1] The announcement from the SEC is found at https://www.sec.gov/news/press-release/2020-212 and https://www.law.cornell.edu/cfr/text/17/240.15c2-11.

Reply in Support of Plaintiff's Application for a Temporary Injunction       Page 2

any share whose issuer is more than 180 days behind on its filing once the amended Rule 15c2-11 goes into effect. This would include the pink sheets or other similar OTC market trading platforms. So, if this injunction is not granted, and if trial takes longer than September 2021, Black Mountain's current sole means of justice and compensation will be completely gone. That is irreparable harm because it will kill any ability of Black Mountain to monetize the one asset that appears to be left to satisfy any money judgment.

## B. BLACK MOUNTAIN'S WARRANT ENTITLES IT TO RECEIVE THE SHARES IRRESPECTIVE OF THE 4.99% THRESHOLD

Two Rivers's primary contention on Black Mountain's likelihood of success on the merits is that under the Warrant, Black Mountain cannot own more than 4.99% of Two Rivers's outstanding shares of stock.

But Two Rivers never provides any actual evidence of what that number is. How many shares outstanding are there and according to what actual documented proof? There is no evidence cited or referred to in the Response to support the conclusory statement that the number of shares requested exceeds the 4.99% threshold. To the contrary, the fact that Two Rivers hasn't filed a 10Q or 10K in years belies any reliability of this convenient statement.

Even if the shares requested in the notice did exceed the 4.99% threshold, Section 2.2 of the Warrant plainly states that when the total shares exercised would exceed 4.99% of the total outstanding shares, then Two Rivers is still obligated to issue the shares that are not in excess of the 4.99% threshold, and then issue the balance once Black Mountain divests the shares it has been issued.

Most importantly, the 4.99% Section 2.2 threshold limitation has no damages implication for Two Rivers and is not there to protect Two Rivers. It is there to protect Black Mountain from having to file a SEC Form 13D and incur the burdens therewith. Section 2.2 specifically allows Black Mountain to increase the threshold unilaterally. The only implication to being issued more than 4.99% of the shares is

1   that Black Mountain would have to file a SEC Form 13D to declare that it holds
2   more than that number of shares. Black Mountain would do so here. The lack of
3   public filings by Two Rivers cannot be used as a sword because it caused Black
4   Mountain to lack prior notice that it needed to give its 60-days notice until now.
5   Thus, the 60-day notice that Black Mountain intends to increase the threshold should
6   likewise be deemed waived by Two Rivers—it cannot be the beneficiary of its own
7   malfeasance.

8          Given these facts and the fact that Two Rivers is no longer reporting to the
9   SEC, it has no protectable interest in not having Black Mountain own more than
10  4.99% of its shares either.

11  **C. THE EXERCISE NOTICE WAS NOT DEFICIENT**

12         There are several reasons why the identified "deficiency" of the failure to
13  surrender is a red herring.

14         ***First***, Section 2.1(a) explains in relevant part that:

15                The date such Notice of Exercise is either faxed, emailed or
16                delivered to the Company shall be the "Exercise Date" provided
17                that, if such exercise represents the full exercise of the outstanding
18                balance of the Warrant, the Holder shall tender this Warrant to the
19                Company within five (5) Trading Days thereafter, ***but only if the***
20                ***Warrant Shares to be delivered pursuant to this Notice of Exercise***
21                ***have been delivered to the Holder as of such date.***

22  See Warrant (Ex. B to TI Motion) § 2.1(a) (emphasis added). In its Response, Two
23  Rivers conveniently leaves the emphasized qualifying language out of its recitation
24  of the Warrant. The condition on the surrender requirement is why Section 2.1(d)
25  parenthetically provides that surrender of the Warrant is only "*if required.*" Two
26  Rivers never states anywhere that surrender is "required" or why that is so, given
27  that the shares were never delivered to Black Mountain.

28

_____

Reply in Support of Plaintiff's Application for a Temporary Injunction      Page 4

1      ***Second,*** Two Rivers never states what act would satisfy the "surrender" of the

2    Warrant. Requiring *physical* delivery of the Warrant makes no sense and is not

3    required by the terms of the Warrant itself. While the Warrant states that the "Notice

4    of Exercise" may be delivered by "either fax[ing], email[ing] or deliver[ing]" it to

5    Two Rivers, *see* Section 2.1(a), nothing describes how a "surrender" is

6    accomplished. It appears that practically speaking, the surrender language in the

7    Warrant is vestigial from the time when Warrants were certificated and operated

8    more like negotiable instruments. As courts have explained, today, "surrendering"

9    the warrant implies relinquishing the rights therein to any more shares. *Accord*

10   *Huppe v. Guez*, No. CV 04-07609 DT (RZx), 2005 U.S. Dist. LEXIS 51155, at *20

11   (C.D. Cal. 2005) ("because a warrant represents a right to purchase a stock directly

12   from an issuer, the surrender of a warrant does not involve a transaction in the

13   issuer's stock. Instead, when a warrant is surrendered to the issuer, the issuer is

14   relieved of its obligation to issue stock.") (citing *Freedman v. Barrow*, 427 F. Supp.

15   1129, 1152 (S.D.N.Y. 1976) ("the expiration and/or surrender of an option upon the

16   exercise of the appurtenant SARs is not a sale back to the company, either of the

17   option, or the underlying stock.")).

18       ***Third***, nothing suggests that surrender of the Warrant is a condition *precedent*

19   to issuing the shares. For one thing, the Warrant allows a partial exercise—meaning,

20   the Warrant can be partially converted into shares the rest of the Warrant held. *See*

21   Section 2.1(a) and Section 2(b). After a partial exercise, the old warrant is not given

22   up and a new warrant, for the unexercised portion, is not issued in its place. Nothing

23   in the Warrant suggests that a ceremonial or ministerial act is material to the bargain.

24   This is even more true given that the Warrant only has to be surrendered *only after*

25   the shares are delivered and only if the exercise is for the remaining value of the

26   Warrant. The parties knew how to condition the share issuance upon conditions

27   precedent and did not do so when it came to "surrender" of the Warrant.

28

_____

Reply in Support of Plaintiff's Application for a Temporary Injunction    Page 5

1    ***Finally***, the failure to surrender the Warrant—whatever that means—is not a

2  basis for denying the share issuance. At worst, this Court's Injunction could simply

3  require Black Mountain to make whatever gesture of surrender is called for under

4  the Warrant as a condition of obtaining the shares.

5  **D. THE BALANCE OF EQUITIES FAVORS BLACK MOUNTAIN**

6        Defendant complains of no injury other than a technical deficiency of

7  surrendering the Warrant (as if the failure to do so caused it any injury whatsoever).

8  There is no equity to be gained by denying relief. Two Rivers admits there is a

9  contract. Admits that it is enforceable. Admits it has not complied. And does not

10  contest the fact that absent the shares, Black Mountain will have no way to obtain

11  compensation for its rights in the Warrant if relief is denied.

12       On the other hand, Black Mountain has offered to put any proceeds from the

13  sale of any shares into the registry of the Court or in escrow pending conclusion of

14  the lawsuit. Thus, there is and will be no concomitant injury to the issuer, Two

15  Rivers, if Black Mountain is deemed to have been incorrect in its lawsuit.

16                              **CONCLUSION**

17       For the foregoing reasons and those set forth in the Opening Papers, Plaintiff

18  respectfully requests a temporary injunction order for Two Rivers and all of those

19  acting in concert with it to issue to Black Mountain 6,471,632 shares.

20

21  Dated:  June 18, 2021                    SBAITI & COMPANY PLLC

22                                           */s/ Mazin A. Sbaiti*

23                                           Mazin A. Sbaiti

24
                                             Counsel for Plaintiff
25                                           Black Mountain Equities, Inc.

26

27

28

_____

Reply in Support of Plaintiff's Application for a Temporary Injunction      Page 6